IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

---

| | |
|---|---|
| BRAD KITZEL : | |
| 8101 Ashford Ct. : | |
| Frederick, MD 21702 : | CIVIL ACTION NO. _____ |
| : | |
| Plaintiff, : | **JURY TRIAL DEMANDED** |
| : | |
| v. : | |
| : | |
| ACME CRYOGENICS, INC. : | |
| 2801 Mitchell Ave. : | |
| Allentown, PA 18103 : | |
| : | |
| Defendant. : | |

---

## CIVIL ACTION COMPLAINT

Plaintiff Brad Kitzel ("Plaintiff"), by and through his undersigned attorney, for his Complaint against Acme Cryogenics, Inc. (hereinafter "Defendant"), alleges as follows:

## NATURE OF THE ACTION

1. Plaintiff initiates this action contending that Defendant violated his rights protected under the Pennsylvania Wage Payment and Collection Law ("WPCL"), 43 P.S. § 260.1, *et seq.*, and breached its contractual obligations towards Plaintiff under Pennsylvania common law.

## JURISDICTION AND VENUE

2. Plaintiff filed the instant action within the statutory time frame applicable to his Complaint.

3. This is an action authorized and instituted pursuant to the Pennsylvania Wage Payment and Collection Law ("WPCL"), 43 P.S. § 260.1, *et seq.*

4. This Court has diversity jurisdiction over this matter pursuant to 29 U.S.C. § 1332, as the amount in controversy exceeds $75,000.00, and the parties are citizens of different states.

5. The venue in this district is proper pursuant to 28 U.S.C. § 1391(b), as the unlawful practices of which Plaintiff is complaining were committed in the Commonwealth of Pennsylvania.

**PARTIES**

6. Plaintiff, Brad Kitzel, currently resides at 8101 Ashford Ct., Frederick, MD 21702.

7. Defendant, Acme Cryogenics, Inc., is a for-profit corporation organized and existing under the laws of the Commonwealth of Pennsylvania, with a principal place of business located at 2801 Mitchell Ave., Allentown, PA 18103.

8. Plaintiff was an employed by Defendant at all relevant times hereto.

9. At all times relevant hereto, Defendant acted or failed to act through its agents, servants, and/or employees thereto existing, each of whom acted at all times relevant hereto in the course and scope of their employment with and for Defendant.

**FACTUAL BACKGROUND**

10. Paragraphs 1 through 9 are hereby incorporated by reference as though the same were fully set forth at length herein.

11. Plaintiff first began his employment with Defendant in or around November 2014, in the position of Sales Engineer.

12. In his capacity as Sales Engineer, Plaintiff received commission-based pay on completed sales.

13. In addition thereto, Plaintiff also received salary-based compensation.

14. During the course of his employment, Plaintiff generated between 15-20% of his sales in Pennsylvania.

15. Additionally, Plaintiff was required to report to Defendant's headquarters located in Allentown, Pennsylvania periodically throughout his employment with Defendant.

16. Further, all of Plaintiff's personnel records are located at Defendant's Allentown, Pennsylvania headquarters.

17. When Plaintiff was hired, Plaintiff's employment offer letter discussed Defendant's commission structure.

18. Critically, Plaintiff's employment offer letter stated, "Commission on sales begins with the first dollar of all product sales achieved and will be paid quarterly." See Plaintiff's Offer Letter, attached as Exhibit A.

19. Pursuant to Defendant's offer letter of employment, the percentage of commission generated on net sales varied between 1.5%, 2.0%, 2.5%, and 3%. See Exhibit A.

20. In order to earn a higher percentage of commission, Plaintiff's sales were required to meet certain "Sales Dollar Milestones." See Exhibit A.

21. On or about May 7, 2021, Plaintiff submitted his resignation to Defendant, effective May 21, 2021.

22. Despite Plaintiff's offer letter stating, "Commission on sales begins with the first dollar of all product sales achieved and will be paid quarterly," Defendant refused to compensate Plaintiff for commissions earned that were due and owing prior to his resignation.

23. Upon Plaintiff's complaint of Defendant's failure to compensate Plaintiff for the commissions he earned, Defendant responded to Plaintiff in a letter dated July 6, 2021 that

"[Defendant's] clear and consistent policy with respect to the payment of commissions is that commissions are not 'earned,' and therefore not payable, unless and until payment with respect to a sale has been received from the customer." See Letter from Defendant to Plaintiff, dated July 6, 2021, attached as Exhibit B.

24. In actuality, no such "clear and consistent policy" existed while Plaintiff worked for Defendant.

25. In addition, Plaintiff's offer letter for employment does not state that Plaintiff would forfeit commissions that were due and owing upon his resignation. See Exhibit A.

26. Based on the aforementioned facts, Plaintiff's sales records, and in accordance with Defendant's commission structure, Plaintiff is owed approximately $115,000 for unpaid commissions that are due and owing to him within the meaning of the WPCL.

27. There is no "good faith dispute" as to Plaintiff's entitlement to his unpaid wages, and Plaintiff is thus categorically entitled to the payment of liquidated damages in the amount of 25% of the unpaid commissions, or approximately $28,750. See 42 P.S.§ 260.10.

28. As a result of Defendant's willful, unlawful practices as described above, Plaintiff has suffered damages.

**COUNT I**
**PENNSYLVANIA WAGE PAYMENT AND COLLECTION LAW**
**43 P.S. § 2620.1, *et seq.***
**FAILURE TO PAY WAGES DUE AND OWING**

29. Paragraphs 1 through 28 are hereby incorporated by reference as though the same were fully set forth at length herein.

30. At all times relevant hereto, Plaintiff was an employee within the meaning of the WPCL.

31. Defendant is an "employer" as defined by the WPCL, and therefore subject to the provisions of the WPCL.

32. Plaintiff and Defendant earned into an employment agreement whereby Plaintiff would, among other things, receive commission-based compensation.

33. As stated above, Defendant failed to pay Plaintiff's earned commissions.

34. The aforementioned unpaid commissions constitute "wages" which are due and owing under the WPCL, and which have remained unpaid significantly in excess of the time period provided under 43 P.S. § 260.10.

35. As a direct and proximate result of Defendant's illegal conduct, Plaintiff has suffered and will continue to suffer harm, and is entitled to all legal and equitable remedies available under the WPCL.

36. Defendant's conduct was intentional, deliberate, willful, and conducted in disregards to the rights of Plaintiff.

**WHEREFORE,** Plaintiff respectfully requests that this Court enter judgment in his favor and against Defendant and grant the maximum relief allowed by law, including, but not limited to:

A. An award to Plaintiff in the amount equal to his unpaid wages;

B. Liquidated damages of not less than twenty-five percent (25%) under the WPCL;

C. Pre-judgment interest in an appropriate amount;

D. Reasonable attorney's fees and all costs of this action;

E. Such other and further relief as is just and equitable under the circumstances; and

F.Any verdict in favor of Plaintiff is to be molded by the Court to maximize the financial recovery available to Plaintiff in light of the caps on certain damages set forth by applicable law.

## COUNT II
## BREACH OF CONTRACT
## FAILURE TO PAY WAGES

37.Paragraphs 1 through 36 are hereby incorporated by reference as though the same were fully set forth at length herein.

38.Plaintiff and Defendant entered into a valid contract concerning the terms and conditions of Plaintiff's employment with Defendant.

39.Defendant breached the contract by failing to pay Plaintiff in accordance with his contractual agreement with Defendant as described above.

40.As a result of Defendant's breach, Plaintiff has suffered damages.

**WHEREFORE,** Plaintiff respectfully request that this Court enter judgement in his favor and against Defendant, and grant the maximum relief allowed by law, including, but not limited to:

A.An award to Plaintiff in an amount equal to his unpaid wages;

B.Pre-judgment interest in an appropriate amount;

C.Such other and further relief as is just and equitable under the circumstances; and

D.Any verdict in favor of Plaintiff is to be molded by the Court to maximize the financial recovery available to Plaintiff in light of the caps on certain damages set forth by applicable law.

## JURY DEMAND

Plaintiff hereby demand a trial by jury as to all issues so triable.

Respectfully submitted,

**MURPHY LAW GROUP, LLC**

By: */s/ Benjamin Salvina*
Benjamin Salvina, Esquire
Eight Penn Center, Suite 2000
1628 John F. Kennedy Blvd.
Philadelphia, PA 19103
TEL: 267-273-1054
FAX: 215-525-021
bsalvina@phillyemploymentlawer.com

Dated: September 29, 2021          *Attorneys for Plaintiff*

## **DEMAND TO PRESERVE EVIDENCE**

The Defendants are hereby demanded to preserve all physical and electronic information pertaining in any way to Plaintiff's employment, to his potential claims and his claims to damages, to any defenses to same, including, but not limited to, electronic data storage, employment files, files, memos, job descriptions, text messages, e-mails, spread sheets, images, cache memory, payroll records, paystubs, time records, time sheets and any other information and/or data which may be relevant to any claim or defense in this litigation.

# EXHIBIT A



October 31, 2014

Mr. Brad Kitzel
416 Dracena Way
Gulf Breeze, FL 32561

Dear Brad:

Acme Cryogenics is pleased to extend to you an offer of employment as a Sales Engineer- VJ Pipe in the Sales and Business Development Department. In this position you will report directly to Mike Dewey, General Manager. Your tentative start date will be November 17, 2014.

You will be offered a variable base compensation plan with the base salary of $75,000 per year on an annualized basis, plus commission. Variable base compensation plans are not eligible for company bonus programs or profit sharing. Commission on sales begins with the first dollar of all product sales achieved and will be paid quarterly. Commissions will be paid by the 15th of the month following quarter end. Commission ranges will reset each year based on inflation, business and market conditions and other economic indicators. The commission structure is as follows:

| Sales Dollars | Commission | Sales Dollar Milestones | Potential Earnings |
|---|---|---|---|
| $0          - $1,000,000 | 1.5% | $1,000,000 | $ 90,000 |
| $1,000,001 - $2,000,000 | 2.0% | $1,500,000 | $100,000 |
|  |  | $2,000,000 | $110,000 |
| $2,000,001 - $3,000,000 | 2.5% | $2,500,000 | $122,500 |
|  |  | $3,000,000 | $135,000 |
| $3,000,001 – and above | 3.0% | $3,500,000 | $150,000 |
|  |  | $4,000,000 | $165,000 |

Initial job responsibilities will include (Other duties may be assigned):
- Review VJP system drawings and customer specifications. Produce written VJP quotations and hand isometric sketches.
- Travel to job site to accurately measure VJP routing, custom engineered for optimum performance and exact fit.
- Submit fully detailed VJP isometric sketches to drafting. Review and sign off AutoCAD approval drawings and assist pipe designer with any special design details.
- Meet potential VJP customers. Promote Acme Cryogenics' VJP, Field Service, and all other products.
- Participate in team strategic VJP sales and production meetings with a focus on marketing, Liquid Nitrogen Gas (LNG) and international business.
- Provide engineering and design input for VJP custom products and new product development.
- Attend trade shows and conferences and document customer meetings and results.

1

Vacation will be defined on a calendar year, and be must be used by December 31, of each year. Acme will provide 120 hours of vacation in 2015. Thereafter, vacation will be issued in accordance with the employee handbook at 120 hours of vacation each year until the year in which your twelfth anniversary is reached.

Other programs in the "Employee Benefits Package" to which you will be entitled include:
**(Based on starting date, benefits are available starting January 1, 2015).**
- Employee and Dependent Health Insurance at reasonable cost to the employee.
- Life Insurance/Short Term Disability fully paid by Acme Cryogenics, Inc.
- Subject to specific limitations, salary can be paid for certain unavoidable absences from work (death in family, and jury duty).
- Participation in 401(k) program <u>after 6 months of employment</u>, age 21, and the next open enrollment period. (January and June of each year)
- 11 Paid Holidays per calendar year and 3 personal days per year, per handbook policy.
- Reimbursement for all reasonable travel and living expenses as outlined in Travel and Living Expense Policy.

Due to the nature of your responsibilities, in accordance with the Fair Labor Standards Act, you are not eligible for payment of overtime for working more than 40 hours in one week. This job offer is valid until November 7, 2014 and is contingent upon receipt of the results of a satisfactory drug test, reference and background check. The drug test must be completed no later than two weeks from the date of this letter. Your signature below indicates that there are no confidential restrictions between you and your former employers. Upon acceptance of our offer, Human Resources will contact you to arrange for the screening test.

Please note that nothing contained in this correspondence is intended to be and should not be construed as a contract, express or implied. Your employment with Acme shall be on an at-will basis. As such, either party may terminate the employment relationship at any time, with or without cause. This offer of employment does not alter your employment at-will status or guarantee you employment for any specific period of time.

Brad, we feel your background and experience is a good match for Acme's needs. We look forward to having you as part of our team. If you understand and accept these terms, please sign and return page 2 of this letter to Human Resources at 2801 Mitchell Avenue, Allentown, PA 18103 or scan and send back via email. Upon receipt of your acceptance I will contact you to arrange for your pre-employment paperwork and drug screen.

If you have any questions, please call me at (610) 791-7909 ext. 322.

Sincerely,

*Karen McAndrew-Bush*
Human Resources Generalist/Staffing Specialist

Accepted:
Signature: *Brad K. Kitzel*
Printed Name: BRAD K. KITZEL

# EXHIBIT B



ACME CRYOGENICS, INC.
2801 Mitchell Avenue • Allentown, PA 18103

Phone 610-966-4488 • Fax 610-791-2402
Toll Free 800-422-2790 • www.acmecryo.com

July 06, 2021

Mr. Brad Kitzel

Dear Brad:

I am writing to respond to your June 13, 2021 letter to me, in which you assert that Acme Cryogenics, Inc. ("Acme") has not paid you all commissions to which you are legally entitled. Your position is incorrect. Acme's clear and consistent policy with respect to the payment of commissions is that commissions are not "earned," and therefore not payable, unless and until payment with respect to a sale has been received from the customer. Further, neither your offer letter nor your commission plan provide for payment of any commissions following the termination of your employment. Accordingly, the only commission payments to which you were entitled were those with respect to sales that were invoiced and paid as of the date of your resignation. All such payments have been made and you are not entitled to anything further from Acme.

I also note that the language from your offer letter that you cite in your June 13 does not change the above conclusion. The language you reference deals with the portion of sales that are to be included in the calculation of your commissions, not when a commission is "earned" or are to be paid. As noted, Acme has always paid commissions only upon receipt of payment from a customer, and has treated you in accordance with this policy.

In conclusion, Acme appreciate the efforts that you made on behalf of the company and wish you the best in your future endeavors. Acme is confident that it has at all times treated you fairly and in accordance with the law. We hope, therefore, that you will recognize that there is no basis for any legal action against Acme and that you and Acme can each move forward without further dispute. Should you choose to pursue this matter further, however, Acme will vigorously defend any and all claims.

Sincerely,

*Dave*

David Fritz
CEO

